**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEACH COMMUNITY BANK,** | ) | |
| **Appellant** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 16-cv-00467-KD-M** |
| | ) | |
| **JULIE JOHNSON** | ) | |
| **Appellee.** | ) | |

**ORDER**

This matter is before the Court on Appellant Beach Community Bank's ("the Bank") appeal of the United States Bankruptcy Court's September 1, 2016 decision granting judgment for the Debtor, Appellee Julie Johnson, on the Bank's Adversary Complaint objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4). (See Doc. 12 at 5). The Court has reviewed the decision (Doc. 7), the record, and the accompanying briefing (Docs. 12, 14, and 15). Upon consideration, the United States Bankruptcy Court is **AFFIRMED**.

**I. Standard of Review**

Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). This Court reviews *de novo* the legal conclusions of the bankruptcy court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of

the bankruptcy court to judge the credibility of the witnesses." See In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. W. Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984) (citing United States v. U.S. Gypsum Co., 333 U.S. 364 (1948)).

## II. Analysis

Upon its review of the record and the decision of the bankruptcy court, this Court has has determined that the bankruptcy court's findings of fact were not clearly erroneous, and after *de novo* review of the conclusions of law, finds no error. The Court hereby adopts the decision of the United States Bankruptcy Court as its own. That decision (nearly verbatim)[1] follows:

Debtor Julie Johnson is 35 years old and lives with her parents in Fairhope, Alabama. She has been wholly supported by her parents since graduating from college in 2003. Ms. Johnson unfortunately has had some severe personal and physical challenges. She is a recovering alcoholic and has been sober for about five years. She went through two interventions, several hospitalizations, and two stints in residential rehab before becoming sober. She also suffers from severe Crohn's disease, a disease of the digestive system which sometimes causes her to unexpectedly lose control of her bowels. Ms. Johnson also suffers from stress, depression, and anxiety and has been treated for those conditions.

As part of her recovery process, Ms. Johnson, with her mother Linda Johnson's support, has taken up fitness and bodybuilding, even competing in bodybuilding competitions. Her mother supports her financially in the endeavors because it helps Ms. Johnson stay healthy and sober.

[1] This Court has made minor adjustments to the Bankruptcy Judge's oral opinion to clarify or remove conversational phrases.

Debtor Julie Johnson and her father Terrell Johnson guaranteed or executed a promissory note in the amount of $780,000 from 30A Estate, Inc. to Beach Community Bank in 2007. 30A Estate failed shortly thereafter in the recession of 2008-09. Beach sued 30A Estate, Julie Johnson, and Terrell Johnson and obtained a Florida state court judgment in the amount of $960,045.42 in November 2009.

The Johnson family currently has jewelry stores in Fairhope, Alabama, Mountain Brook, Alabama, and Highlands, North Carolina. The Highlands store is operated on a seasonal basis during the second half of the year only. Julie Johnson helps out in the Fairhope store both when her parents are there and when they are operating the store in Highlands. She has never received any W-2s or 1099s from any of the jewelry businesses. She has never filed an income tax return.

In March 2015, when Julie Johnson filed her Chapter 7 case, there were several bank accounts to which she had access. First, there was a Regions Bank account ending in 1575 in her father Terrell Johnson's and her names. There was a PNC Bank account ending with 5844 in the name of TLJ Estate Jewelry. Additionally, Julie had signatory authority and charging privileges on several other family business accounts and debit cards.

In the spring of 2015, Beach domesticated its judgment against Julie Johnson in the Circuit Court of Baldwin County and garnished her Regions Bank account. In response, her parents opened up two accounts at The First[.][2] One account was in Julie's name individually and the other was in the name of TLJ Estate Jewelry. Her parents deposited $500 in the personal account. Julie Johnson did not instigate the opening of these accounts and her parents provided the paperwork for her to sign.

Ms. Julie Johnson also had access to jewelry business funds by use of a "Square" account [] which some store sales paid for via American Express or the sale proceeds of some consigned

[2] The name of the bank is simply "The First." (footnote not in original).

items would be paid into her personal Regions Bank account. She also on occasion has used cash from the Fairhope store for small personal purchases.

All three members of the immediate family -- Terrell, Linda, and Julie Johnson -- have "lived out of" the business bank accounts to a large degree for the last several years. In other words, they all three made substantial personal charges on the jewelry business accounts.

All three of Julie Johnson, Linda Johnson, and Terrell Johnson testified that they considered that the money in those business accounts belonged to Linda Johnson and that Julie was allowed to use the debit cards or other money from the company accounts only with permission of her mother, Linda Johnson. That permission could be cut off at any time.

Both Mrs. Johnson and Julie Johnson testified, and the Court finds it to be true, that Julie was allowed to use the business accounts for incidental personal expenses but that she had to get express permission from her mother for anything other than that or for any significant business expenses. Julie's personal use of the business accounts has been substantially curtailed by her mother since the bankruptcy filing.

The Johnsons' tax and accounting situation is, putting it mildly, not the best. None of the companies in which Terrell and/or Linda Johnson have any interest have filed tax returns since 2011. None of Linda, Terrell, or Julie Johnson have filed tax returns since 2011. As noted earlier, Julie has never filed a tax return.

The company accountant, Brad Congleton, testified that he was working on the overdue corporate tax returns and the individual returns of Linda and Terrell Johnson for 2012 forward. He testified that -- assuming that Linda Johnson continued to tell him as she had before and as she testified in court, which was that she intended that any personal charges incurred by Julie

Johnson on the corporate accounts to be gifts from her to Julie -- those charges would be accounted for as distributions to Linda Johnson.

The gifts to Julie Johnson would be reflected, to the extent they exceeded $14,000 a year, on a gift tax return by Linda Johnson. He further testified that he had never seen any W-2 or 1099 issued for any employee of any of the Johnson-related businesses, but that draws by a member of any of the LLC's would be reflected by a K-1 and the income taxes paid by the individual member.

Linda Johnson testified that her daughter's problems, primarily the Crohn's disease and accompanying bowel problems at this point, make it impossible for Julie Johnson to work a regular job and that having Julie help out at the store and supporting her with gifts is much better than risking the possibility of relapse. In the early years of her daughter's sobriety, Mrs. Johnson required her daughter to be seen by a nurse and to receive regular breathalyzer tests. She continues to keep close tabs on her daughter even when Linda Johnson is in North Carolina and the daughter is in Fairhope.

The discrepancies which form the basis of the bank's 727(a)(4) claim can be summarized as follows:

First, the original petition did not list any amounts on Official Form 22A-1, the Chapter 7 "statement of your current monthly income." Question 4 of that form calls for "all amounts from any source which are regularly paid for household expenses of you or your dependents, including child support. Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates...."

Second, on Schedule B, Ms. Johnson did not list the personal account at The First which had been opened about two weeks earlier, and she did not list any of the business accounts to

which she had access. In June 2015, she amended Schedule B to list her personal bank account at The First.

Third, on Schedule I, Ms. Johnson checked that she was not employed and did not list any employment income. She later amended Schedule I to add an addendum that she had access to certain business accounts of her parents.

Fourth, the Debtor did not list any equitable or future interests, rights, or powers exercisable for the benefit of Debtor under Item 19 of Schedule B.

There was testimony at trial about several different entities in which Linda Johnson and/or Terrell Johnson have had interests: TLJ Estate Jewelers Holdings, LLC, TLJ Holdings, LLC, TLJ Management, LLC, TLJ Irrevocable Trust of 2010, and Cook Elrod Johnson LLC. However, the undisputed testimony was that Julie Johnson has not and does not have any ownership interests in or any control over any of these entities or any other business entities of the Johnsons' except that she briefly had an interest in Cook Elrod Johnson LLC about ten or twelve years ago.

Here is the applicable law. Bankruptcy Code Section 727(a)(4)(A) provides that the Court should grant the Debtor a discharge, unless the Debtor knowingly and fraudulently, in connection with the case, made a false oath or account.

To justify denial of a discharge under Section 727(a)(4)(A), the false oath must be fraudulent and material. [] Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991).

The subject matter of a false oath is material, and thus is sufficient to bar discharge, if it bears a relationship that the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of its property. [] Chalik v. Moorefield, 748 F.2d 616 (11th Cir. 1984).

A debtor's signature on a bankruptcy petition, schedule of assets and liabilities, and a statement of financial affairs, under penalty of perjury, are written declarations that have the force and effect of oaths. Thus a false statement or omission within a debtor's schedules may qualify as a false oath under Section 727(a)(4)(A). [] In Re: Gonzalez, 2008 WL 2397608 (Bankr. S.D. Fla. 2008).

[] Judge Margaret Mahoney, stated in the case of In Re: Cornelius, 333 B.R. 850 (Bankr. N.D. Fla. 2005) the following […]:

> As a general proposition of bankruptcy law, one of the Bankruptcy Code's fundamental goals is to relieve the honest but unfortunate debtor of his indebtedness, allowing him to make a fresh financial start. This fresh start is primarily accomplished through the discharge of debt.
>
> Though the Bankruptcy Code provides most debtors with a fresh start, the Code prevents dishonest debtors from improperly using it as a shield. While the Bankruptcy Code does not expressly require that the debtor file and prosecute the bankruptcy case in good faith, good faith and candor are necessary prerequisites to obtaining a discharge.
>
> Denial of a discharge is an extraordinary remedy, and therefore statutory exceptions to discharge must be construed liberally in favor of the debtor and strictly against the objecting party. The plaintiff bears the burden of establishing the grounds for denial of discharge and must prove his case by a preponderance of the evidence.

333 B.R. at 859. [(citations and quotations omitted, some paraphrasing)].

> Section 727(a)(4) ensures that those who seek the shelter of the Bankruptcy Code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to ensure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based upon fact rather than fiction.
>
> The Eleventh Circuit has stated that the veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act. The plaintiff bears the burden of proving that the false oath was made knowingly and fraudulently about a material matter.

> For a false oath to be material, it must be demonstrated that it bears a relationship to the bankrupt's business transactions or estates, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.

333 B.R. at 862. [(citations and quotations omitted, some paraphrasing)].

The bank put on evidence about the somewhat byzantine corporate ownership structure of the family jewelry stores and the fact that all three of the immediate family members, as stated above, essentially live out of the businesses by paying most of their expenses from business accounts.

The bank contends that Terrell and Linda Johnson have utilized these measures in order to shield assets and income from the reach of the bank's judgment against Terrell Johnson and Julie Johnson. However, the only question before this Court is the 727(a)(4)(A) issue of whether the Debtor Julie Johnson swore fraudulently on her schedules such that her discharge should be denied.

With respect to the business bank accounts, although Julie Johnson had access to some of the business accounts both by check and debit card, her use of those funds was strictly monitored and controlled by her mother. She had to get permission from her mother for any extraordinary expenses, either corporate or individual. The funds in the accounts were not generated by Julie Johnson, and her access to the accounts could be cut off at any time. She did not have any ownership interest in any of the businesses at any relevant time.

The cases cited by Beach involving failure to disclose bank accounts are distinguishable because they all involved the debtor owning the account, creating the funds in the account, or controlling the account. In In Re: Cornelius, 333 B.R. 850, 866 (Bankr. N.D. Fla. 2005), the debtor testified that he had no bank account during a period of time in which he had actually

deposited $250,000 into a personal checking account. In other words, the undisclosed checking account was his own.

In In Re: Roberts, 2010 WL 376399 (W.D. Tex. 2010), it is not clear from the opinion in whose name the account was held, but the court found that the debtors had "exercised continuing ownership and control over the account...."

In In Re: Bullough, 358 B.R. 261 (Bankr. N.D. Tex. 2007), the debtor wholly owned the two corporations in which name the accounts were held and a third account was in the name of the debtor and his personal assistant.

In In Re: Guenther, 333 B.R. 759 (Bankr. N.D. Tex. 2005), it was the debtor's own bank accounts which were not revealed on the schedules. The same is true for In Re: Rao, 526 B.R. 623 (Bankr. E.D. La. 2015).

In In Re: Zhang, 463 B.R. 66 (Bankr. S.D. Ohio 2012), the debtor was 20 percent owner of the corporation which owned the bank account and his wife owned 80 percent.

And in In Re: Baldridge, 256 B.R. 284 (Bankr. E.D. Ark. 2000), the debtor failed to list at least three accounts as a part of a broad overall admitted scheme to avoid creditors.

Although the Debtor here had the ability to make some charges on the business bank accounts, that access was limited and controlled by her mother. And although the pattern of the whole family "living out of" the business checking accounts may have been unorthodox, the Court finds that Julie did not have any interest in or any control over the business accounts such that they should be considered hers and thus had to be listed on her schedules.

The Court thus finds that the Plaintiff has failed to prove by a preponderance of the evidence that the schedules were false under Section 727(a)(4) for failure to list the business bank accounts.

The Debtor's failure to list the checking account in her name at The First is more problematic. Julie Johnson testified without contradiction that the account was opened by her parents after her Regions Bank account had been garnished. She did not go by the bank; her parents brought the paperwork for her to sign.

The First account was opened on March 3, 2015, and the bankruptcy was filed on March 13, 2015. The account was opened with a deposit of $500. The statement for the account, which was Beach Exhibit 5, shows that the Debtor used the account eight times between March 3, 2015 and March 10, 2015 -- all relatively small charges totaling $431.19. Julie Johnson testified that she simply forgot about that account when she was sitting down with her first bankruptcy attorney to draft her schedules.

The account had $68.81 in it at the time she filed bankruptcy on March 13[, 2015]. That amount certainly would have been exempt under Alabama law, although the fact that an unlisted asset would have been exempt is not an excuse for failing to list it. That account was in the Debtor's name and it was in existence at the time of filing and should have been listed on the schedules.

However, given the turmoil in her life at that time, the Debtor's relative lack of financial sophistication, and the lack of incentive to conceal the account since the funds would have been exempt, the Court believes Julie Johnson's testimony that her failure to list The First personal account was inadvertent, not intentional, and not knowingly made with fraudulent intent. The Court thus finds that her failure to list The First bank account does not bar her discharge.

With regard to the claim that Debtor should have listed as income on her schedules the support which she receives from her parents -- housing, food, clothing, and use of the store accounts -- the Court finds that the support was not regular enough such that it should have been

listed as income or "regular contributions" or "regularly paid" amounts for purposes of her bankruptcy schedules.

There was no specific or regular amount of support or gifts, and as of the time of the bankruptcy Linda Johnson had substantially reduced it. Further, the questions do not clearly call for listing non-cash support such as a room in which to live.

Regarding whether her charges on the business accounts and other money from the businesses should be counted as income, the Debtor has never received a W-2 or 1099 from any of the businesses. As discussed earlier, the company accountant is going to treat those amounts as distributions to the Debtor's mother, Linda Johnson.

Although the arrangement may have been unconventional, the Court finds that Julie Johnson could not have reasonably been expected to recharacterize the purchases and other funds from the business accounts as income when the businesses themselves did not do so. The charges and other items from business accounts were thus not income which had to be reported on the schedules.

The Court also finds that the question of whether those charges and items should have been counted as income was at best such a gray area that in not listing them as income the Debtor did not have the requisite fraudulent intent.

Regarding the Debtor's answer to Item 19 on Schedule B, the Court finds that Plaintiff did not prove by a preponderance of the evidence that the Debtor had any equitable or future interests, rights, or powers exercisable for the benefit of the Debtor. And therefore, there was no falsity with that answer.

[The Court] understand[s] that the bank's position is that Linda and Terrell Johnson have structured their jewelry businesses and arranged for the family members to live out of those

businesses in an attempt to prevent the bank from collecting on its large judgment against Terrell Johnson and Julie Johnson.

Again, that is not the issue before this Court. The only issue before this Court is whether under Bankruptcy Code Section 727(a)(4)(A) Julie Johnson swore falsely on her bankruptcy schedules such that she should be denied a Chapter 7 discharge.

There was no evidence at trial that she participated in setting up the arrangements of which the bank complains, and the Court will not impute any alleged fraudulent intent of the parents to Julie Johnson in the absence of such evidence.

## III. Conclusion

Based on the foregoing, and after conducting a *de novo* review of the bankruptcy court's conclusions of law the undersigned concludes that there is no error. Nor were the findings of fact clearly erroneous. Accordingly, the decision of the United States Bankruptcy Court for the Southern District of Alabama is **AFFIRMED**.

**DONE** and **ORDERED** this **30th** day of **December 2016.**

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**